NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| INTREPID INSURANCE CO. and AMERICAN SAFETY CASUALTY INSURANCE COMPANY, | **OPINION & ORDER** |
| Plaintiffs, | Civil Action No. 11-6267 (FSH)(JBC) |
| v. | February 6, 2015 |
| PAUL MILLER AUTO, INC., | |
| Defendant. | |

**FAITH S. HOCHBERG, U.S.D.J.:**

This matter comes before the Court upon a Motion for Summary Judgment by Paul Miller Auto, Inc. and a Motion for Summary Judgment by Intrepid Insurance Co. and American Safety Casualty Insurance Company (collectively "Plaintiffs" or "the insurers"). The Court has considered the parties' submissions pursuant to Federal Rule of Civil Procedure 78.

## I. BACKGROUND

Defendant Paul Miller Auto is an automobile dealership, which is insured by Plaintiffs Intrepid and American Safety. A non-party, Rick Cohen, allegedly committed a fraudulent scheme leading to losses by the dealership involving eight vehicles.[1] The parties dispute whether the damage caused by the alleged fraud is covered under the language of the dealership's insurance policy.

---

[1] According to the parties, Cohen has pled guilty to bank fraud.

1

Between 2002 and 2009 Paul Miller and North Shore Motor Group—Cohen's company—had a business relationship. On over three hundred occasions, Cohen found automobile buyers, negotiated a price, and facilitated a sale between Paul Miller and the purchaser. When a customer sought to purchase a car, Cohen agreed to obtain copies of the purchasers' driver's license, insurance documents, loan and financial documents, and other information, and provide copies of these documents to the dealership. Cohen would then pick up the car from the dealership and deliver it to the customer. He negotiated a fee for each car that was sold.

Cohen's alleged scheme involved fraudulently applying for car loans on behalf of prior customers without their knowledge. He would purportedly use the personal documentation and credit information of these earlier customers to arrange for a car loan from a third-party lender; purchase the vehicle from Defendant's dealership using the fraudulent loan; and sell the car at auction, pocketing the proceeds. Cohen—purportedly impersonating the customer—would then default on the loan, and the lender would demand repayment from Defendant's dealership.

In a variation of the purported scheme, a customer would genuinely seek to purchase one of Defendant's vehicles. The customer would pay Cohen in cash for a vehicle, but instead of using the cash to purchase a vehicle, Cohen would use the customer's personal information to submit a loan application. The parties allege that he would then fraudulently inform Defendant's dealership that the customer took out a loan so that the dealership would transfer the automobile to Cohen. Cohen would take the car and then deliver the car to the customer, allegedly pocketing the customer's cash payment for himself.

Defendant's insurance policy with Plaintiffs defines "Covered Property" as follows: "those classes of 'vehicles' for which a specific coverage indicator is shown in the Declarations

under COVERED PROPERTY." The Policy defines "Covered Causes of Loss" as follows:

> RISK OF DIRECT PHYSICAL LOSS OR PHYSICAL DAMAGE to Covered Property against those Covered Causes of Loss indicated in the Declarations and defined as follows . . .  DECEPTION meaning theft of Covered Property caused by or resulting from your voluntarily giving possession of or title to Covered Property to someone, other than your employee or a carrier for hire, but only if induced to do so by some fraudulent scheme, trick, device or false pretense that is a crime. This does not include inability or failure of a buyer to pay you for Covered Property unless you can show that the buyer acted with criminal intent to steal the Covered Property from you.

Further, the Policy states that "[w]e will cover 'loss' caused by 'Deception' provided that . . . before giving Covered Property to another person, you make a copy of that person's driver's license." The Policy also states that "[f]ailure to comply with the above conditions will void coverage for that particular loss caused by or resulting from Deception." Finally, the Policy lists the following as an exclusion:

> We will not pay for loss or damage caused by or resulting from . . . [d]ishonest or criminal act by you, any of your partners, employees, directors, officers, trustees, authorized representatives or anyone to whom you have voluntarily given possession of or title to Covered Property for any purpose.

Plaintiffs' claim adjuster received Defendant's notice of loss of six of the subject vehicles on February 3, 2011. On March 8, 2011, Plaintiffs issued a denial letter based on Defendant's purported failure to comply with the requirement that Defendant make a copy of the person's driver's licenses before handing over possession of the vehicles.  Defendant requested reconsideration and permitted depositions of two dealership employees. The employees stated that it was dealership policy to observe the transfer of the vehicle to the purchaser; to make copies of the purchasers' driver's licenses at the time of delivery; and that failure to copy the purchaser's driver's license in the presence of the purchaser would result in cancelling the

automobile delivery. Defendant admits that this did not occur with respect to some of the disputed vehicles, rather, they transferred the vehicles to Cohen rather than the customer. The dealership asserts it obtained copies of Cohen's driver's license before giving him the automobiles.

Plaintiffs issued a final denial of Defendant's claims on October 20, 2011. On October 26, 2011, Plaintiffs commenced the instant action, seeking a declaratory judgment affirming their coverage determination relating to the six subject vehicles. On February 16, 2012, Defendant provided notice to Plaintiff of the loss of two additional vehicles that were also the subject of Cohen's alleged fraud. Plaintiffs also denied Defendant's claims with respect to these vehicles.

## II.     STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, "summary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller v. Ind. Hosp.*, 843 F.2d 139, 143 (3d Cir. 1988). All facts and inferences must be construed in the light most favorable to the nonmoving party. *Peters v. Del. River Port Auth.*, 16 F.3d 1346, 1349 (3d Cir. 1994). The judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. "Consequently, the court must ask whether, on the summary judgment record, reasonable jurors

could find facts that demonstrated, by a preponderance of the evidence, that the nonmoving party is entitled to a verdict." *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 860 (3d Cir. 1990).

The party seeking summary judgment always bears the initial burden of production. *Celotex*, 477 U.S. at 323. This burden requires the moving party to establish either that there is no genuine issue of material fact and that the moving party must prevail as a matter of law, or to demonstrate that the nonmoving party has not shown the requisite facts relating to an essential element of an issue on which it bears the burden. *Id*. at 322–23. This burden can be "discharged by showing . . . that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. Once the party seeking summary judgment has carried this initial burden, the burden shifts to the nonmoving party.

To avoid summary judgment, the nonmoving party must then demonstrate facts supporting each element for which it bears the burden, thus establishing the existence of a "genuine issue of material fact" justifying trial. *Miller*, 843 F.2d at 143; *accord Celotex*, 477 U.S. at 324. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id*. at 587 (quoting F*irst Nat'l Bank of Ariz. v. Cities Serv. Co*., 391 U.S. 253, 289 (1968)).

### III.   DISCUSSION

The parties agree that New Jersey insurance law controls. "[T]he words of an insurance policy should be given their ordinary meaning, and in the absence of an ambiguity, a court should not engage in a strained construction to support the imposition of liability." *Longobardi v.*

5

*Chubb Ins. Co. of N.J.*, 582 A.2d 1257, 1260 (N.J. 1990). But where there are ambiguities in the policy, they should be construed "in favor of the insured in order to give effect to the insured's reasonable expectations." *Am. Motorists Ins. Co. v. L-C-A Sales Co.*, 155 N.J. 29, 41 (1998). "An ambiguity in a contract exists if the terms of the contract are susceptible to at least two reasonable alternative interpretations . . . ." *Nester v. O'Donnell*, 301 N.J. Super. 198, 210 (App. Div. 1997) (quoting *Kaufman v. Provident Life & Cas. Ins. Co.*, 828 F.Supp. 275, 283 (D.N.J. 1992)).

Although the parties claim that the only dispute is the interpretation of the insurance contract, the record reveals genuine disputes of facts, including: the existence and scope of an agency relationship between Cohen and the dealership; and whether Cohen was the dealership's authorized representative.  For instance, the insurers claim that coverage should be denied because Cohen's acts purportedly fall within an exclusion from coverage for property based on any "[d]ishonest act by you . . . [or an] authorized representative . . . ." As evidence that Cohen was the dealership's "authorized representative," the insurers point to Defendant's seven-year business relationship with Cohen; their three hundred legitimate transactions; that Cohen was paid a fee; and that Defendant's counterclaim referred to Cohen as a dual agent for the customer and the dealership. The dealership responds that Cohen ran an independent company, North Shore Motor Group; did not purport to represent Paul Miller; was not paid a set commission, but negotiated a fee on a case-by-case basis; and had no formal contractual relationship with the dealership.  Under New Jersey law, whether the extent of a business relationship rises to an agency relationship is a question of fact. *See Expediters Int'l of Washington, Inc. v. Direct Line Cargo Mgmt. Servs., Inc.*, 995 F. Supp. 468, 482 (D.N.J. 1998) (denying summary judgment). Neither party has cited any legal authority regarding agency, nor for that matter any legal

authority which would compel a finding that Cohen was or was not an "agent" or "authorized representative" as a matter of law. "[A]s the moving party on summary judgment, [Plaintiffs] ha[ve] the burden on this motion of demonstrating that [Defendant] did not establish the presence of a genuine issue of material fact regarding her prima facie case." *Levendos v. Stern Entm't, Inc.*, 860 F.2d 1227, 1230 (3d Cir. 1988). The moving parties have failed to show that any of the undisputed facts compels finding, as a matter of law, that Cohen was an "agent" or "authorized representative."

Similarly, the insurers urge that the dealership is excluded from coverage because it purportedly failed to comply with the requirement that "before giving Covered Property to another person, you make a copy of that person's driver's license." It is undisputed that, although contrary to company policy, the dealership first transferred the automobiles to Cohen, who, in turn, transferred the automobiles to purchasers. (PS ¶ 9-14; DR ¶ 9-14).[2] The dealership argues that the term "another person" refers to the person to whom the automobile was transferred: here, Cohen. The dealership proffers witness testimony that the dealership made a copy of Cohen's license before transferring any Covered Property. (ECF No. 53-6, 171:21-25). On the other hand, the insurers argue that "another person" in this case should be interpreted to mean the purchaser, not Cohen, because "Cohen was merely Paul Miller's agent who was supposed to facilitate the sale" and not "another person." Again, whether Cohen was an independent intermediary or acting within the scope of an agency relationship is a disputed issue

---

[2] The Court refers to Plaintiffs' Statement of Undisputed Material Facts and Defendants' Statement of Undisputed Material Facts as "PS" and "DS," respectively. Plaintiffs' Response to Defendant's Statement of Undisputed Material Facts and Defendant's Response to Plaintiffs' Statement of Undisputed Material Facts are referred to as "PR" and "DR," respectively.

of material fact.[3]

The insurers next contend that "Cohen stole money from the third-party lenders, not vehicles," *i.e.*, not Covered Property. (Pls.' Mem. 13). The policy covers:

> DECEPTION meaning theft of Covered Property caused by or resulting from your voluntarily giving possession of or title to Covered Property to someone, other than your employee or a carrier for hire, but only if induced to do so by some fraudulent scheme, trick, device or false pretense that is a crime. This does not include inability or failure of a buyer to pay you for Covered Property unless you can show that the buyer acted with criminal intent to steal the Covered Property from you.

Under New Jersey law a person commits the crime of "theft if he purposely obtains property of another by deception," including "[c]reat[ing] or reinforc[ing] a false impression, including false impressions as to law, value, intention or other state of mind." N.J.S.A. § 2C:20-4. "There must be a misrepresentation by a defendant. This misrepresentation must be knowing and made with the specific intent to cheat or defraud. The aggrieved party must rely on this misrepresentation in parting with his property and, finally, defendant must receive something of value as a result of the misrepresentation." *State v. Cox*, 150 N.J. Super. 599, 604 (Ch. Div. 1977) (construing predecessor statute) *aff'd*, 160 N.J. Super. 28 (App. Div. 1978).

It is stipulated that Cohen pocketed genuine customers' purchase money and then fraudulently obtained loans on behalf of those same customers.[4] (PS ¶ 29; DR ¶ 29). The parties agree that Cohen then obtained possession of the dealership's automobiles. (PS ¶ 10-14; DR ¶

---

[3] The fact that the dealership originally asserted during the insurance investigation that it "gave" the "Covered Property" directly to purchasers, but now both parties agree that the dealership in fact transferred the automobiles to Cohen, is not dispositive as to the interpretation of the term "giving Covered Property to another person." It is more appropriately raised with respect to Plaintiffs' claim for "failure to cooperate."

[4] The parties also dispute whether four or five of the eight total transactions involved this particular version of the scheme.

10-14). They further agree that Cohen induced the dealership to transfer the automobiles to him by fraudulently representing that the customer had obtained a valid loan. (DS ¶¶ 13-16, 22-38; PR ¶¶ 13-16, 22-38). Taking the facts in the light most favorable to the non-moving party, Cohen allegedly created the false impression that customers had obtained a valid loans, and thereby was able to purposely obtain "possession" of the dealership's automobiles by fraud. Plaintiffs have not cited any legal authority that Cohen's subsequent transfer of possession of the property to a genuine customer changes the status of the property. The policy itself speaks of the dealership's "direct physical loss" as a result of the dealership "voluntarily giving possession" based on deception, not whether the intended customer ultimately acquired possession.  Thus, Defendant may be able to prove that Cohen purposely acquired "possession" of both money and automobiles by deception, subsequently transferring the fraudulently acquired automobiles to genuine customers so that his theft of the purchase money would not be immediately discovered. The fact that Cohen may also have purportedly defrauded the finance company and genuine purchasers does not alter the conclusion, if established at trial, that he obtained possession of the dealership's property by "deception" as defined within the policy.

The remaining arguments are also based on disputed facts. Plaintiffs assert that coverage should be denied as a matter of law due to: (1) Defendant's purported failure to provide timely notice of loss; (2) Defendant's alleged failure to cooperate by misrepresenting material facts; and (3) Defendant's employees' alleged dishonest acts which purportedly exclude Defendant from coverage.  As Plaintiffs note, denial of insurance due to the insured's untimely notice requires a showing that substantial rights have been irretrievably lost. Although Plaintiffs assert they have been so prejudiced, their argument relies only upon their assertion—disputed by Defendant—that delay has made witnesses "unreachable," although no explanation is offered.  Similarly,

Plaintiffs' mere assertion that Defendant's supervisors "knowingly made false statements"—by giving testimony regarding dealership policy at odds with what an investigation discovered purportedly occurred—is not sufficient to find "failure to cooperate" as a matter of law, which requires evidence of willful misrepresentations rather than mistake or lack of personal knowledge.[5] *Longobardi v. Chubb Ins. Co. of N.J.*, 582 A.2d 1257, 1261-62 (N.J. 1990). Finally, Plaintiffs argue that Defendant's employees' purported breach of company policy—by delivering vehicles to Cohen rather than the customer—meets the policy exclusion for a "dishonest or criminal act." Plaintiffs do not cite any legal authority finding "dishonesty" as a matter of law, nor is such a finding warranted here. The many genuinely-disputed facts in this case preclude summary judgment.

## IV. CONCLUSION & ORDER

**IT IS** this 6th day of February, 2015, hereby

**ORDERED** that Plaintiffs' Motion for Summary Judgment is **DENIED**; and it is further

**ORDERED** that Defendant's Motion for Summary Judgment is **DENIED;** and it is further

**ORDERED** that this matter is referred to mediation consistent with Local Civil Rule 301.1 and the following:

    1. Counsel and the parties shall participate in mediation and shall cooperate with

---

[5] In addition to the five grounds for denying the policy asserted in Plaintiffs' Motion for Summary Judgment, in opposition to Defendant's motion, Plaintiffs assert additional grounds for the denial of coverage. Because the Court denies Defendant's motion for summary judgment, it does not consider these additional grounds, which were not asserted in Plaintiffs' affirmative motion.

the mediator;

2. Counsel and the parties (including individuals with settlement authority) shall attend mediation sessions as requested by the mediator;

3. The mediator may meet with counsel and the parties jointly or ex parte. All information presented to the mediator shall, on request, be deemed confidential and shall not be disclosed by anyone, including the mediator, without consent, except as necessary to advise the Court of an apparent failure to participate. The mediator shall not be subject to subpoena by any party. No statements made or documents prepared for mediation shall be disclosed in any subsequent proceeding or construed as an admission;

4. The mediation shall be completed within thirty (30) days of the appointment of a mediator; the mediation shall not exceed two days, and the parties shall make themselves available on the date selected at the mediator's request unless they are scheduled to appear in court;

5. The parties shall divide the cost of mediation equally; and

6. All other deadlines will remain in place during mediation.

**IT IS SO ORDERED**

**/s/ Faith S. Hochberg_____**
**Hon. Faith S. Hochberg, U.S.D.J.**